## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| Maria Agelli, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil No. 14-cv-01720 (APM) |
| Sylvia M. Burwell, | ) | |
| Secretary, U.S. Department of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM OPINION

### I.    INTRODUCTION

In November 2003, Plaintiff Maria Agelli entered into a confidential Memorandum of Understanding (MOU) with her employer, the National Institute of Health (NIH), to resolve an equal employment opportunity (EEO) complaint that she had filed.  As part of the MOU, NIH agreed that it would expunge from her personnel records an unflattering performance review from 2003, which had prompted the EEO complaint.  Fast forward nine years to October 2012. Plaintiff learned for this first time that NIH had not in fact destroyed the negative performance review as required by the MOU.  Instead, NIH had preserved and circulated it among staff members.  Believing that NIH's actions violated not only the MOU, but also the Privacy Act, Plaintiff filed this suit in October 2014.

The primary question this case presents is whether Plaintiff timely filed her suit under the Privacy Act.  The Act provides a two-year limitations period that commences when the plaintiff knows or should have known of the alleged violation.  Here, the court concludes that Plaintiff knew or should have known about NIH's failure to destroy the 2003 negative performance review

more than two years before she filed suit.  Accordingly, the court grants Defendant's Motion for

Summary Judgment and enters judgment in favor of Defendant.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Plaintiff's 2003 EEO Complaint

Plaintiff Maria Agelli is a physician epidemiologist, employed as a Medical Officer at

NIH's National Cancer Institute ("Cancer Institute").  Compl., ECF No. 1, ¶ 15; Aff. of Dr. Maria

Agelli, ECF No. 12-2 [hereinafter Agelli Aff.], ¶ 3.  Plaintiff began working at NIH in 2001 as an

employee of the Cancer Institute's Cancer Training Branch.  Agelli Aff. ¶ 4.  In 2002, Dr. Carolyn

Strete became Plaintiff's supervisor.  *Id.* ¶¶ 12-14.  Conflicts quickly arose between Plaintiff and

Dr. Strete.  *Id.* ¶¶ 13-16.

The following year, in September 2003, Dr. Strete drafted a highly critical performance

evaluation of Plaintiff in which Dr. Strete recommended that Plaintiff be transferred to another

component of NIH (the "2003 Performance Review").  *Id.* ¶ 18; Def.'s Mot. to Dismiss or, in the

Alter., for Summ. J. [hereinafter Def.'s Mot.], Ex. 1, ECF No. 7-2 [hereinafter MOU].  In response,

Plaintiff filed an EEO complaint alleging that the 2003 Performance Review was the product of

discrimination based on her sex and national origin.  Agelli Aff. ¶ 22.

In November 2003, Plaintiff and NIH resolved her discrimination complaint by entering

into a confidential Memorandum of Understanding (MOU).  *Id.* ¶ 33.  As part of the MOU, NIH

agreed to assign Plaintiff to another component of NIH for one year.  Def.'s Mot., Ex. 1 at 1.  It

also agreed that the Cancer Institute "will use the interim 2003 performance evaluation mutually

agreed upon in the latest revision."  *Id.*  And, most importantly for present purposes, NIH agreed

that the Cancer Institute would not "retain any written record of negative comments in any

personnel folder." *Id.*  In other words, NIH agreed to remove the 2003 Performance Review from Plaintiff's personnel file.

2.     *NIH's Treatment of the 2003 Performance Review*

Move the calendar forward almost nine years to the fall of 2012.  Plaintiff had filed a new EEO complaint, which was pending before the Equal Employment Opportunity Commission.  Def.'s Mot., Ex. 3.  On October 2, 2012, Plaintiff received documents from NIH relating to her new EEO complaint.  Agelli Aff. ¶¶ 42, 45.  Among those records was an email dated January 2005 from Dr. Strete to Dr. Ernie Hawk, who was "the newly appointed Officer Director" of the Cancer Institute ("Strete Email").  *Id.* ¶ 35.  According to Plaintiff, the Strete Email was among thousands of pages NIH produced on October 2, 2012.  *Id.* ¶¶ 42, 45.

The Strete Email evidenced a clear violation of the MOU.  Attached to the Email was Plaintiff's 2003 Performance Review, which NIH was supposed to have destroyed under the terms of the MOU.  Def.'s Mot., Ex. 1.  Moreover, the Email showed Dr. Strete sharing the 2003 Performance Evaluation with another NIH colleague, Dr. Hawk.  In the text of the email, Dr. Strete wrote that her "comments [in the 2003 Performance Review] were significantly watered down by [another NIH official] and those went to [Plaintiff's] official files.  Therefore, I assume these"—meaning the 2003 Performance Review comments—"are dead.  I am only sending these to you so that you can see her through my eyes.  Obviously this is confidential." *Id.* at 1.

The precise date on which Plaintiff actually saw the Strete Email, and learned of NIH's violation of the MOU, is in dispute.  Following her discovery of the Strete Email, Plaintiff wrote two letters to Debra Chew, the Director of NIH's EEO office.  In the first letter, dated October 11, 2012 ("October 11th Letter"), referring to her discovery of the Strete Email, Plaintiff wrote:

> On *October 2, 2012,* while examining documents produced by the agency
> in response to my discovery requests . . . the six pages of defamatory lies authored

by Dr. Strete – that should have been destroyed in 2003 – and one defamatory memo (so far), which also was to be destroyed in 2003, were instead perfectly preserved. Not only that, but the agency records show that these defamatory documents have been freely shared among NCI management.

Def.'s Mot., Ex. 3, ECF No. 7-4 (emphasis added).

On January 3, 2013, Plaintiff again wrote to Chew (the "January 3rd Letter"), apparently because Chew had not responded to the October 11th Letter. Def.'s Reply, Ex. 6, ECF No. 13-1. In the January 3rd Letter, Plaintiff reiterated that she had discovered the Strete Email on October 2, 2012. In the first line of that letter, she wrote: "With my October 11, 2012 letter, I informed you that on *October 2, 2012*, I learned that NCI management has affirmatively failed to comply with the agreement they had reached with me through a [MOU] on November 2003." *Id.* (emphasis added).

Notwithstanding the fact that the October 11th and January 3rd Letters both clearly state that Plaintiff learned about the Strete Email on October 2, 2012, Plaintiff now claims otherwise. In a sworn affidavit, Plaintiff attests that she *received*—but did not *review*—the documents from NIH on October 2, 2012. Agelli Aff. ¶ 41. She did not actually *review*, and therefore *discover*, the Strete Email, Plaintiff attests, until October 11, 2012—the day she wrote Chew. *Id.* ¶¶ 46, 50 ("I saw the document in question on October 11, 2012, for the first time. . . . It was at about 2 AM on October 11, 2012, when I found [the Strete Email] among hundreds of unrelated document pages.").

## B.    Procedural History

Plaintiff filed her Complaint *pro se*—she later retained counsel—on October 14, 2014. Compl. at 1. She sought damages solely under the Privacy Act of 1974, 5 U.S.C. § 552a. *Id.* at

21-22.[1]  Plaintiff alleged that, by maintaining and distributing the 2003 Performance Review, which contained false and inaccurate information about her, NIH had violated subsections (g)(1)(C) and (g)(1)(D) of the Privacy Act.  Pl.'s Opp'n to Def.'s Mot., ECF No. 12 [hereinafter Pl.'s Opp'n], at 12.

The sole named Defendant—Secretary of the U.S. Department of Health and Human Services (HHS) Sylvia M. Burwell, sued in her official capacity—then moved to dismiss or, in the alternative, for summary judgment on three grounds:  (1) she is not a proper defendant, as the Privacy Act only permits suit against the agency itself;[2] (2) Plaintiff's claim is barred by the statute of limitations; and (3) Plaintiff failed to state a claim under the Privacy Act.[3]  *See generally* Def.'s Mot.  Plaintiff opposed the Motion, offering only her sworn affidavit as evidence.  *See generally* Pl.'s Opp'n.[4]

## III.   LEGAL STANDARD

Because the parties have submitted sworn affidavits and other evidence "outside the pleadings," Federal Rule of Civil Procedure 12(d) requires the court to treat Defendant's motion

---

[1] Plaintiff has not alleged under 5 U.S.C. § 552(d)(2)-(3) that NIH denied her access or refused her an opportunity to correct her personnel records.  Indeed, Plaintiff concedes that she never administratively sought to access or correct the allegedly offending records.  *See* Pl.'s Resp. to Def.'s Stmt. of Material Facts, ECF No. 12-1, at 5.

[2] It is true that "no cause of action exists that would entitle [a plaintiff] to relief from [individual defendants] under the Privacy Act[.]"  *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (citing 5 U.S.C. § 552a(g)(1) (authorizing suits against an "agency")).  However, because Plaintiff was *pro se* when she filed her Complaint, the court applies to it "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and construes her Complaint to make a claim against the relevant agencies.  Although the Complaint does not formally identify any agency as a party to the lawsuit, it does state that Plaintiff "sues the Defendant" and then defines the "Defendant" to include HHS, NIH, and the Cancer Institute.  Compl. at 1.

[3] Because the court concludes that Plaintiff's claim is barred by the statute of limitations, it does not reach Defendant's argument that Plaintiff failed to state a claim.

[4] Thereafter, Defendant filed a Reply brief, which attached as an exhibit for the first time the January 2013 Letter.  Pl.'s Reply, Ex. 6.  Plaintiff then sought leave to file a surreply to address the January 2013 Letter, *see generally* Pl.'s Mot. for Leave to File a Surreply, ECF No. 14, which Defendant opposed, Def.'s Resp. to Pl.'s Motion for Leave to File a Surreply, ECF No. 15.  "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond."  *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,, Inc.*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002).  "A surreply is most appropriate where the new matter introduced is factual."  *Id.* at 277.  Because Defendant raised the January 2013 Letter—a factual matter—for the first time in its Reply brief, the court finds it appropriate to allow Plaintiff to file a surreply.  Plaintiff's Motion for Leave to File a Surreply is therefore granted.

not as one to dismiss for failure to state a claim under Rule 12(b)(6), but as one for summary

judgment under Rule 56.[5]  Fed. R. Civ. P. 12(d).  When such a conversion occurs, as here, the

court must determine whether there is any genuine issue of material fact.  Fed. R. Civ. P. 56(c).  A

genuine dispute over a material fact exists when "a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must

review the evidence "in the light most favorable to the nonmoving party" and draw all inferences

in favor of that party.  *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing *Anderson*, 477

U.S. at 255).  The court should grant summary judgment in favor of the defendant if the plaintiff,

after adequate time for discovery, is unable to make a showing to establish an essential element of

its case for which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).

## IV.   DISCUSSION

The Privacy Act requires, among other things, that governmental agencies "maintain

accurate records and safeguard[ ] individuals from capricious dissemination of personal

information by the government."  *Tijerina v. Walters*, 821 F.2d 789, 793 (D.C. Cir. 1987).  The

Act's "principal enforcement mechanism" provides for civil remedies for those who are aggrieved.

*Id.* at 793.  Under subsection (g)(1)(C), a person may bring a civil suit whenever any agency

> fails to maintain any record concerning any individual with such accuracy . . . and
> completeness as is necessary to assure fairness in any determination relating to the
> qualifications, character, rights, or opportunities of, or benefits to the individual
> that may be made on the basis of such record, and consequently a determination is
> made which is adverse to the individual.

---

[5] In arguing that Plaintiff's Complaint was untimely, Defendant asserts that "Plaintiff's long delay deprives the Court of subject matter jurisdiction over her claims, and they should be dismissed pursuant to Rule 12(b)(1)."  Def.'s Mot. at 7.  However, the limitations period under the Privacy Act is not jurisdictional.  *See Chung v. DOJ*, 333 F.3d 273, 276-78 & n.* (D.C. Cir. 2003).  Accordingly, the court does not apply the standard under Rule 12(b)(1)—for dismissal for lack of subject-matter jurisdiction—but instead applies the summary judgment standard under Rule 56.

5 U.S.C. § 552a(g)(1)(C).  Under subsection (g)(1)(D), a person also may bring suit if the agency fails to comply with the Act or any regulation promulgated thereunder, "in such a way as to have an adverse effect on an individual."  *Id.* § 552a(g)(1)(D).  The Privacy Act generally provides that "[a]n action to enforce any liability created under this section" must be brought "within two years from the date on which the cause of action arises."  *Id.* § 552a(g)(5).

Here, Defendant asserts that Plaintiff's suit was untimely because she filed it on October 14, 2014—more than two years after October 2, 2012, when she received the Strete Email from NIH.  Def.'s Mot. at 5-7; Def.'s Reply at 5-6.  Plaintiff, on the other hand, argues that she timely filed suit, or at least that there is a genuine dispute of material fact as to the timeliness of her filing. Plaintiff contends that because she actually read the Strete Email for the first time on October 11, 2012, her Privacy Act claim began to accrue on that date, not nine days earlier on October 2, 2012, when she received the files from NIH.  Plaintiff's Complaint was timely filed on October 14, 2014, she reasons, because October 11, 2014—two years after her actual discovery of the Strete Email— was a Saturday, and the following Monday, October 13, 2014, was Columbus Day—an official court holiday.  Pl.'s Opp'n at 16-19.  Thus, Plaintiff claims, she timely filed her suit on October 14, 2014, the first business day after Saturday, October 11, 2014.  Pl.'s Opp'n at 16-19.  The court disagrees.

As Defendant correctly point outs, numerous cases from this jurisdiction hold that a cause of action arises under the Privacy Act—and the limitations period starts to run—when the plaintiff receives a copy of the allegedly offending record.  In *Ciralsky v. CIA*, 689 F. Supp. 2d 141, 158 (D.D.C. 2010), the court found that the "statute of limitations . . . was triggered" on July 6, 1998, when the CIA "passed" the documents containing the records at issue to the plaintiff. "Undoubtedly, Plaintiff attained knowledge of the alleged violation on that day . . . .  Therefore,

his claim brought on July 19, 2000, over two years after the statute of limitations was triggered on July 6, 1998, is time-barred." *Id.* Similarly, in *Doe v. Thompson*, 332 F. Supp. 2d 124 (D.D.C. 2004), the court held that the limitations period commenced when "the plaintiff was mailed and actually received notice of the" offending document. *Id.* at 133. "It was upon receipt of that notice that [the plaintiff] had two years to investigate the matter and then initiate a Privacy Act suit." *Id.* at 133-34. And, in *Brooks v. Bureau of Prisons*, No. 04-cv-00055 (EGS), 2005 WL 623229 (D.D.C. Mar. 17, 2005), the court held that the limitations period began to accrue when the plaintiff received a document that put him on notice that the BOP had incorrect records about him. *Id.* at *2. There, the court found that "Plaintiff failed to bring a civil action under the Privacy Act within two years from the date on which the cause of action arose" and granted the defendants' motion to dismiss. *Id.*; *see also Akutowicz v. United States*, 859 F.2d 1122, 1126 (2nd Cir. 1988) (finding that the plaintiff's claim was time-barred "two years after his discovery of the alleged misrepresentation in his record (*i.e.*, the date when he received a copy of his record from the Department of State")).

In this case, Plaintiff concedes that she received the Strete Email from NIH on October 2, 2014. Agelli Aff. ¶ 35. Thus, on that date, the limitations period on her Privacy Act claim began to accrue. Her lawsuit, filed two years and twelve days after she received the Strete Email, therefore was untimely.

Plaintiff's primary response to this straightforward limitations analysis is that, because she has attested that she read the Strete Email for the first time on October 11, 2012—not on October 2, 2012—her sworn affidavit creates a genuine dispute of material fact about the date of accrual that precludes the grant of summary judgment. Pl.'s Opp'n at 19. But that argument is misplaced. The law in this Circuit has long been clear that, "in a normal Privacy Act claim, the cause of action

does not arise and the statute of limitation does not begin to run until the plaintiff knows *or should know* of the alleged violation." *Tijerina*, 821 F.2d at 798 (emphasis added).[6]  Thus, in a normal case such as this one, a Privacy Act claim starts to accrue when the plaintiff has inquiry notice of the alleged violation, not when she acquires actual knowledge of the agency's alleged misconduct. *See Farrero v. NASA*, 180 F. Supp. 2d 92, 95-96 (D.D.C. 2001) ("[T]he statute of limitations [under the Privacy Act] does not require actual knowledge of the alleged violation.  The statute of limitations begins to run *either* when the plaintiff knew or should have known of the alleged violation.") (citing *Tijerina*, 821 F.2d at 798); *Samtmann v. DOJ*, 35 F. Supp. 3d 82, 90 (D.D.C. 2014) ("But the critical inquiry when applying the limitations provisions of the Privacy Act is when plaintiff had or should have had knowledge of a document's existence or disclosure, not when he obtained definitive proof.").

Further, even if Plaintiff's *actual* knowledge of the alleged violation were the trigger for the start of the limitations period, no reasonable trier of fact could conclude that the period commenced on any date other than October 2, 2014.  Plaintiff wrote two letters to NIH—the October 11th Letter and the January 3rd Letter—both of which unequivocally state that she first learned of the Strete Email on October 2, 2012.  In the October 11th Letter she wrote that she discovered the Email "*on* October 2, 2012, *while examining documents* produced by the agency." Def.'s Mot., Ex. 3 (emphasis added).  In the January 3rd Letter, she wrote:  "With my October 11,

---

[6] In *Tijerina*, the court used the phrase "normal Privacy Act claim" because the Act itself provides for a different statute of limitations "trigger" where an agency has engaged in willful misrepresentation of material information. Under subsection (g)(5), "where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after *discovery by the individual of the misrepresentation*." 5 U.S.C. § 552a(g)(5) (emphasis added).  The Court of Appeals has observed that "[t]hat clause extends the normal limitations period in order to ensure that the government cannot escape liability by purposefully misrepresenting information that could establish it already has violated the Act." *Tijerina*, 821 F.2d at 798.  Plaintiff has not alleged a violation of the Privacy Act under subsection (g)(5).  *See* Pl.'s Opp'n at 14.  Thus, the more liberal accrual rule of that subsection does not apply here.

2012 letter, I informed you that *on* October 2, 2012, *I learned* that NCI" had failed to comply with the MOU.  Def.'s Reply, Ex. 6 (emphasis added).  These two contemporaneous records written by Plaintiff establish that she had actual knowledge of the alleged violation on October 2, 2012.

Plaintiff's self-serving affidavit cannot, without more, create a genuine dispute of material fact as to when she learned of the Strete Email.  The Court of Appeals has instructed that "[j]udges may, under certain circumstances, lawfully put aside testimony that [has been] so undermined as to be incredible." *Johnson v. Wash. Metro. Area Trans. Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989). "The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury." *Id.*; *see also Carranza v. Fraas*, 820 F. Supp. 2d 118, 124 (D.D.C. 2011) ("Summary judgment is appropriate when a plaintiff's claim is supported by only her own self-serving affidavit and is undermined by other evidence.").  So it is here.  Plaintiff offers nothing other than her own uncorroborated affidavit to establish October 11, 2012, as the date on which she first reviewed the Strete Email—a contention that is flatly contradicted by the October 11th and January 3rd Letters.  Plaintiff cannot avoid summary judgment based on her self-serving affidavit alone.

Plaintiff also seems to contend that her Privacy Act claim should not be barred by the statute of limitations because the Strete Email was located among hundreds, if not thousands, of pages produced to her by NIH.  Agelli Aff. ¶ 45.  But Plaintiff has not offered any evidence, or made any argument, *see* Pl.'s Opp'n at 17-19, that would support a theory of equitable tolling or equitable estoppel to delay the start of limitations period, *see Chung v. DOJ*, 333 F.3d 273, 278-

79 (D.C. Cir. 2003).  The court therefore must conclude that Plaintiff's Privacy Act claim is barred because she failed to bring it within the applicable two-year statute of limitations.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. A separate Order accompanies this Memorandum Opinion.

Dated:  February 19, 2016

Amit P. Mehta
United States District Judge